UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARK ZANA, | Case No. 2:12-cv-01013-JCM-VCF |
| Petitioner, | |
| | ORDER |
| vs. | |
| DWIGHT NEVEN, et al., | |
| Respondents. | |

This is a counseled petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by a Nevada state prisoner (ECF #1). Before the court is respondents' answer to the remaining claims (ECF #24).

**I. Procedural History and Background**

A jury convicted petitioner Mark Zana ("petitioner" or "Zana") of counts 1, 2 and 6: lewdness with a child under the age of 14; and counts 11, 13, 14, 15, 16 and 17: possession of visual representation depicting sexual conduct of a person under the age of 16 (exhibits to petition, ECF #1, exh 1, pp. 62-64).[1] The sentence imposed by the state district court on December 20, 2007, amounted to 30 years to life in prison (ECF #1, pp. 1-2). The state district court filed the judgment of conviction on January 2, 2008. Pet. Exh. 1, pp. 594-598.

---

[1] All exhibits to the petition, ECF #1, and are found at ECF #s 2-11.

Case 2:12-cv-01013-JCM-VCF   Document 29   Filed 09/23/15   Page 2 of 13

Petitioner appealed; the Nevada Supreme Court affirmed the convictions on September 24, 2009. *See Zana v. State*, 216 P.3d 244 (Nev. 2009).

Petitioner filed a *pro se* state postconviction petition for writ of habeas corpus on December 14, 2009 (exhibits to respondents' motion to dismiss, ECF #16, exh. 4).[2] The Nevada Supreme Court reversed the state district court's denial of the petition and remanded the matter for appointment of counsel. Res. Exh. 6. Ultimately, petitioner filed a second *pro se* state postconviction petition that set forth no supporting facts, and the Nevada Supreme Court affirmed the denial of the second petition. Res. Exh. 10.

Petitioner, through counsel, filed his federal habeas petition on June 14, 2012 (ECF #1). Respondents have now answered the grounds remaining before the court (ECF #24).

**II. Legal Standard under the Antiterrorism and Effective Death Penalty Act**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786 (2011). The Supreme Court has emphasized "that even a strong case for relief does

---

[2] Exhibits to respondents' motion to dismiss, ECF #15, are found at ECF #16).

not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. E.g., *Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

**III. Instant Petition**

**Ground 4**

Petitioner's case arose out of several allegations by female elementary school students that Zana, a fifth-grade teacher, had touched their breasts and/or invited them to place their hand in his front pants pocket to get candy. With respect to counts of possession of visual representation depicting sexual conduct of a person under age sixteen, the actual age of females in pornographic images that investigators discovered on petitioner's home computer was a question of fact for the jury. *Zana v. State*, 216 P.3d 244, 248 (Nev. 2009).

Petitioner alleges in ground 4 that the trial court erred when it denied a defense motion for a new trial on the basis that a juror (1) attempted to locate a pornographic website referenced in trial testimony and (2) experimented with the ability to reach into a seated man's front pocket; and on the basis that a few jurors (3) attempted to guess the ages of churchgoers and passersby in violation of his Fifth and Fourteenth Amendment rights (ECF #1, pp. 35-45).

While courts may set aside jury findings in light of proof of tampering or external influence, they are reluctant to inquire into jury deliberations when a verdict is valid on its face. *Tanner v. U.S.*, 483 U.S. 107, 118-119 (1987). "Such exceptions support rather than undermine the rationale of the rule that possible internal abnormalities in a jury will not be inquired into except in the gravest and most important cases." *Id.* at 119. *See also Remmer v. U.S.*, 347 U.S. 227, (1954). A juror's communication of extrinsic facts implicates the Confrontation Clause. *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000). A court must determine whether such communication was harmless error; that is, whether the extrinsic information had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* (internal quotations and citations omitted).

The *Remmer* case involved an unnamed person remarking to a juror that he "could profit by bringing in a verdict favorable to the [defendant]." *Remmer*, 347 U.S. at 228. The juror reported the contact to the court and the prosecutors, and the FBI was brought in to conduct an investigation during the trial. *Id.* The investigator concluded that the comment was made in jest, and the trial continued, but the defendant was never informed of the incident. *Id.* The Court noted that "private communication, contact, or tampering . . . with a juror during a trial . . . is, for obvious reasons, deemed presumptively prejudicial," and found error in the trial court's denial of the defendants' motion for a new trial without holding a hearing. *Id.* at 229.

Here, the state district court conducted a hearing on the motion for new trial. Pet. Exh. 3, pp. 477-558. All available jurors testified. Some jurors indicated that in between their Friday and Monday deliberations that they or other jurors looked at kids more closely–including at church and passersby in general–to see if they could guess their ages. *Id.* at 503, 538, 541, 551. One juror testified that he put on pants and sat down to see how easy or difficult it was to reach his hand into his front pocket to retrieve something. He shared his thoughts about the pocket with the other jurors and they discussed it for about five minutes. *Id.* at 496-498. The same juror also testified that over the weekend he tried to locate the pornography website at issue himself because he wanted to see if he could tell the age of the girls depicted. He explained that the images in photos or video shown during trial were blurry. He testified that he was unable to locate the site and that he pursued the issue no further. He told the other jurors Monday that he had attempted to look up the website to see if he could ascertain the age of the females. *Id.* at 499-510.

Most of the jurors that testified indicated that there was a few minutes of discussion after the juror revealed that he had tried to find the website. *Id.* at 513, 517, 520-521, 524-525, 532, 541-542, 543, 546, 547, 553-554. Some jurors indicated that the information the juror presented was vague and ambiguous. *See id.* at 518.

Noting that Zana's burden was to present admissible evidence sufficient to establish juror misconduct and to show that the misconduct was prejudicial, the trial court first found that jurors looking more closely at young girls to see if they could gauge their ages or trying to reach into a pocket while seated was not juror misconduct. *Id.* at 640. The trial court found that the internet search

constituted misconduct. *Id.* at 640-641. The court concluded that the juror's findings were vague and ambiguous, that he remained generally unable to identify ages of girls and that no prejudice occurred. *Id.* The court found that the average hypothetical juror would not be influenced by what this juror did and denied the motion for new trial. *Id.* at 641-642.

Affirming the state district court's denial of the juror misconduct claims on direct appeal, the Nevada Supreme Court relied on its decision in *Meyer v. State*, 80 P.3d 447 (Nev. 2003). In *Meyer*, the state supreme court acknowledged a circuit split and adopted the position that it would examine the nature of the extrinsic evidence in determining whether such influence is presumptively prejudicial. *Meyer*, 80 P.3d at 455.

Here, as to the guessing of ages and "pocket experiment" during the intervening weekend, the Nevada Supreme Court stated in a footnote:

> Zana also characterized additional juror behavior as misconduct, including attempting to guess the ages of churchgoers and testing the accessibility of a seated man's pants pocket. Because we conclude such behavior is not misconduct but simply "observation based on matters generally experienced by people in their everyday lives," we confine our discussion of the jury misconduct to the Internet search. *Meyer v. State*, 119 Nev. 554, 568, 80 P.3d 447, 458 (2003).

*Zana v. State*, 216 P.3d 244, 248 n.4 (Nev. 2009)

The Nevada Supreme Court determined that the internet search, however, violated the Confrontation Clause:

> We conclude that the juror's independent search of the Internet did amount to the use of extrinsic evidence in violation of the Confrontation Clause. However, we conclude that one juror's inability to locate a website mentioned during trial is not so prejudicial as to necessitate a new trial.
>
> Upon review of the jurors' testimony at the hearing, it is clear that the jury only briefly discussed the fruitless search and then continued with its deliberation for at least a few more hours. Moreover, the fruitless search was highly ambiguous; there are many possible interpretations of the extrinsic information the juror presented and this resulted in little, if any, probative information being relayed to the other jurors. Furthermore, although the issue that motivated the search—the ages of the females depicted in the photographs on Zana's computer—was material, the fruitless search could in no way affect the jury's inquiry. Because the search's implications are ambiguous, it could not speak to a material issue in the case. Information so ostensibly irrelevant could not prejudice the average, hypothetical juror.

> For the foregoing reasons, we conclude that the district court's denial of Zana's motion for a mistrial, based on juror misconduct, was not an abuse of discretion.

*Id.* at 249.

Petitioner is entitled to relief only if he can establish that the alleged error had a "substantial and injurious effect or influence on the jury's verdict" under the harmless error standard. *See Musladin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009) (quoting and citing *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)); *see also Mancuso v. Olivarez*, 292 F.3d 939 (9th Cir. 2002) (applying *Brecht* harmless error standard to claim that petitioner was denied right to impartial jury based on exposure to extrinsic evidence). This court finds that petitioner has failed to establish that the alleged incidents of juror misconduct had a substantial and injurious effect or influence on the jury's verdict. Considering the juror's testimony, petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Therefore, federal habeas relief is denied as to Ground 4 of the petition.

**Grounds 5 and 10**

In ground 5, petitioner contends that the trial court erred by admitting hearsay testimony of one of the victim's mother and grandmother (ECF #1, pp. 45-48). In ground 10, petitioner claims that the trial court permitted several instances of hearsay in violation of his due process rights (ECF #1, pp. 63-66).

While petitioner frames these as Fifth and Fourteenth Amendment due process violations, these claims actually sound in the Sixth Amendment. In *Crawford v. Washington*, the United States Supreme Court held that nontestimonial hearsay does not violate the Confrontation Clause. 541 U.S. 36 (2004). Generally, the inquiry is whether a statement was "given with the primary purpose of creating an out-of-court substitute for trial testimony." *Ohio v. Clark*, 135 S.Ct. 2173, 2183 (June 18, 2015); *Michigan v. Bryant*, 562 U.S. 344 (2011).

Here, the trial court permitted testimony by the grandmother of one victim about a conversation over dinner when the victim told several family members about repeatedly reaching into the petitioner's

pocket for candy (ECF #1, pp. 45-46). That victim's mother also testified that the victim discussed the incident periodically. *Id*. at 46. Two other mothers also testified about conversations they had with their daughters. *Id*. at 64-66.

These are clear instances of nontestimonial hearsay; it cannot be said that these conversations during which children shared events that allegedly transpired at school with their parents or grandparents were statements made primarily to create out-of-court substitutes for trial testimony. Thus, they do not implicate the Sixth Amendment. To the extent that petitioner alleges that the admission of the hearsay violated NRS 51.035, such a state-law claim is not cognizable in federal habeas corpus. Accordingly, grounds 5 and 10 are denied.

**Ground 7**

Petitioner argues that the trial court erred when it failed to grant the motion to sever the child pornography counts from the lewdness with a child counts in violation of his Fourteenth Amendment due process rights (ECF #1, pp. 56-58).

The Nevada Supreme Court first pointed out that joinder decisions are within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Zana*, 216 P.3d at 249. Under state law, criminal charges are properly joined whenever: (1) the acts leading to the charges are part of the same transaction, scheme, or plan or (2) the evidence of each charge would be admissible in the separate trial of the other charge. NRS 173.115; *Mitchell v. State*, 782 P.2d 1340, 1342 (Nev. 1989); *Robinson v. United States*, 459 F.2d 847, 855 (D.C.Cir. 1972). The state supreme court reasoned:

> Charges with mutually cross-admissible evidence are properly joined because in such a situation "the accused would fare no better from a severance and trial of the severed counts independently." *Robinson v. United States*, 459 F.2d 847, 855–56 (D.C. Cir. 1972). Moreover, severance in such a case would naturally result in separate trials presenting identical evidence and consequentially result in needless judicial inefficiency. *See Robinson*, 459 F.2d at 856. Here, we conclude that joinder was proper because, had the district court granted the motion to sever the lewdness counts from the pornography counts, the evidence of each charge would have been admissible in the separate trial of the other charge.
>
> First, the lewdness charge required the State to prove that Zana touched his young victims for the purpose of gratifying his lusts, passions, or sexual desires. NRS 201.230. The pornography found on Zana's computer suggests that Zana found pornographic images of young females sexually gratifying. The pornography evidence

> indicates Zana intentionally touched his female students for the purpose of satiating his sexual appetite, and that the touching was not by mistake or accident. Therefore, evidence of the pornography was admissible to prove the mental state required for the lewdness charge.
>
> Likewise, evidence of Zana's lewd behavior with young girls under his supervision suggests that the pornography found on Zana's computer was not the result of an accident or mistake. To prove the underage pornography charge against Zana, the State had to prove that he knowingly and willfully possessed the materials. NRS 200.730. Evidence that he inappropriately touched young girls suggests contact with young girls sexually gratified Zana. It is reasonable to then infer that he did not possess pornographic photographs of young females accidentally, but rather knowingly and willfully downloaded the photographs to satisfy the sexual desires his inappropriate touching evidences. Therefore, evidence of Zana's lewd behavior was admissible to prove the knowing and willful element of the pornography charge.
>
> Thus, because evidence of the two charges was cross-admissible, the district court did not abuse its discretion in denying Zana's motion to sever the charges.

*Zana*, 216 P.3d 249-250.

In challenging the Nevada Supreme Court's ruling, Zana cites *United States v. Lane*, 474 U.S. 438 (1986) (ECF #1, p. 56). However, the Ninth Circuit Court of Appeals has observed that the United States Supreme Court has never held that a state court's denial of a motion to sever can, in itself, violate the federal constitution. *See Runningeagle v. Ryan*, 686 F.3d 758, 776–77 (9th Cir.2012); *Collins v. Runnels*, 603 F.3d 1127, 1131 (9th Cir.2010). Regarding *Lane*, the Supreme Court case petitioner cites, as well as *Zafiro v. United States*, 506 U.S. 534 (1993), the court in *Runningeagle* stated:

> [W]e have explicitly concluded that *Zafiro* and *Lane* do not "establish a constitutional standard binding on the states and requiring severance in cases where defendants present mutually antagonistic defenses." *Collins v. Runnels*, 603 F.3d 1127, 1131 (9th Cir.2010). In reaching that holding, we found that the statement in *Lane* regarding when misjoinder rises to the level of constitutional violation was dicta and that *Zafiro* is not binding on the state courts because it addresses the Federal Rules of Criminal Procedure. *Id*. at 1131–33. Neither decision is "clearly established Federal law" sufficient to support a habeas challenge under § 2254. *Id*.

*Runningeagle*, 686 F.3d at 776–77. Therefore, in light of *Runningeagle* and *Collins*, petitioner Zana does not show the Nevada Supreme Court's ruling to be contrary to, or an unreasonable application of, any clearly established federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d).

Moreover, under the circumstances of this case, this court finds that the denial of the motion to sever was correct. As the Nevada Supreme Court explained, the evidence was cross-admissible in order

1  to prove that neither the touching nor the possession of explicit images was inadvertent or accidental.
2  The court finds petitioner's claims meritless and denies habeas corpus relief as to ground 7.

3  **Ground 8**

4  Petitioner contends that the physician who testified on behalf of the prosecution as to the age
5  of females in explicit images provided insufficient evidence to support petitioner's conviction on the
6  possession of pornography depicting a child under sixteen counts (ECF #1, pp. 58-61).

7  "The Constitution prohibits the criminal conviction of any person except upon proof of guilt
8  beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397
9  U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C.
10 § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence
11 adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."
12 *Id.* at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the
13 criminal offense as defined by state law." *Id*. at 324 n.16. On habeas review, this court must assume
14 that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such
15 resolution. *Id*. at 326. Generally, the credibility of witnesses is beyond the scope of a review of the
16 sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

17 A pediatrician testified on behalf of the prosecution as follows: he is an emergency room
18 director at a children's hospital as well as medical director of the program Suspected Child Abuse and
19 Neglect. Pet. Exh. 8 at 1572-1599. His education and experience include a three-year pediatrics
20 residency, a two-year pediatric emergency fellowship, attending pediatric physician at three hospitals
21 and pediatric residents instructor at the Nevada medical school. *Id*. at 1572-1573. He treats patients
22 from birth through age eighteen. He reviewed the images at issue and testified that he would estimate
23 the female in one video clip was under the age of sixteen and was about twelve or thirteen. He based
24 his opinion on his experience treating children and upon factors including body size, child-like face,
25 and lack of physical development. *Id*. at 1578-1579. He stated that with respect to another image he
26 did not have enough information to estimate the female's age but that she was definitely under age
27 sixteen. As to several images, he stated that he did not have enough information to form an opinion as
28

to age. *Id*. at 1580-1582. He explained that he based his testimony on a reasonable degree of medical certainty and his experience. *Id*. at 1598.

The defense offered another physician's testimony. Pet. Exh. 8 at 1603-1629. He testified that he is a board-certified pediatrician and has served as a chief resident at a children's hospital, worked in private practice, has founded and developed a child abuse team and is a clinical professor of pediatrics. *Id*. at 1604-1605. He testified that it was impossible to determine the exact chronological age of the females in the images and that no objective criteria exists to determine the chronological age of anyone in a picture. *Id*. at 1607-1610. He testified that there is a wide range of normal development for girls. *Id*. at 1613.

The Nevada Supreme Court stated in a footnote that it had carefully considered this claim and several others and concluded that they lacked merit. *Zana*, 216 P.3d at 245, n.1. This court is unconvinced that this testimony conflicts. Even if it does, pursuant to *Jackson*, this court assumes the jury resolved any evidentiary conflicts in favor of the prosecution and defers to such resolution. 443 U.S. at 326. The court further notes that the jurors viewed the images, and under Nevada law, to determine the age of a person depicted the jury may view the depiction, consider expert medical testimony or use any other method authorized by the rules of evidence at common law. NRS 200.740. *See also U.S. v. Rearden*, 349 F.3d 608, 614 (9th Cir. 2003) (stating in that case that it was "obvious from the pictures themselves that they are of children"). Petitioner has failed to demonstrate that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 8.

**Ground 9**

Petitioner asserts that his Fifth and Fourteenth Amendment due process rights were violated because the charging document alleged insufficient detail about the charged offenses in the child pornography possession counts 10 through 21 (ECF #1, pp. 62-63). The information incorrectly stated "child" instead of "person under sixteen." Pet. Exh. 1 at 1-9. The information cited to the statute, which proscribes possession of visual representation depicting sexual conduct of persons under sixteen

years of age. *Id*. at 1; NRS 200.730. The trial court denied a defense motion brought immediately before jury selection was to begin to dismiss the counts based on improper pleading and notice. Pet. Exh. 4 at 695-696. The prosecution was permitted to amend the information at that time and insert "person under sixteen" in place of "child." *Id*. at 684, 693. The prosecution noted that the correct statute was cited in the information and that over two years prior the state had argued in justice court as if the children depicted were under sixteen. *Id*. at 680, 685.

The Sixth Amendment, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see In re Oliver*, 333 U.S. 257, 273-74, 68 S.Ct. 499, 507-08, 92 L.Ed. 682 (1948), guarantees a criminal defendant a fundamental right to be clearly informed of the nature and cause of the charges against him. In order to determine whether a defendant has received constitutionally adequate notice, the court looks first to the information. *Calderon v. Prunty*, 59 F.3d 1005, 1009 (9th Cir. 1995). "The principal purpose of the information is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense." *Id*.

Here, the information was corrected prior to commencement of trial or introduction of any evidence. Moreover, the correct statute was cited in the information. Even at the hearing when the court denied the motion to dismiss the counts or sever the trial, defense counsel acknowledged that he was ready to proceed with his expert witness regarding the ages of the people depicted. Pet. Exh. 4 at 677. Defense counsel fully cross-examined the prosecution's physician at trial. Finally, the amended information constricted rather than expanded the charges, that is, if it could have been read before as visual depictions of persons under age eighteen, the prosecution now had to prove under the amended information that the depictions were of persons under age sixteen. Nothing in the record suggests that petitioner was prejudiced in any way. Thus, this court concludes that petitioner has failed to demonstrate that the Nevada Supreme Court's decision is contrary to, or involves an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 9.

The petition is thus denied it its entirety.

### IV. Certificate of Appealability

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

### V. Conclusion

**IT IS THEREFORE ORDERED** that respondents' motion to substitute respondent (ECF #28) is **GRANTED**. The Clerk shall substitute Adam Paul Laxalt for and in the place of Catherine Cortez Masto.

**IT IS FURTHER ORDERED** that the petition for a writ of habeas corpus (ECF #1) is **DENIED IN ITS ENTIRETY**.

**IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT** accordingly and close this case.

**IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF APPEALABILITY.**

Dated September 23, 2015.

UNITED STATES DISTRICT JUDGE